IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TONY L. KING, *et al.*, : | |
| Plaintiffs, : | Case No. 2:04-cv-116 |
| v. : | Judge Sargus |
| REGINALD WILKINSON, : | Magistrate Judge Abel |
| DIRECTOR, OHIO DEPARTMENT | |
| OF REHABILITATION & : | |
| CORRECTION, *et al.*, | |
| : | |
| Defendants. | |

## ORDER

This matter is before the Court on Plaintiffs Christopher R. Bruggeman and Tony Spezzalli's September 28, 2005 objections to the Magistrate Judge's August 26, 2005 Amended Report and Recommendation (doc. 59). This action was brought pursuant to 42 U.S.C. § 1983 by three inmates at the Madison Correctional Institution ("MaCI") alleging that Defendants violated their civil rights when Defendant Officer Michael O'Day issued false conduct reports, and the remaining Defendants then "rubber stamped" their appeals and grievances. Plaintiffs maintain that the conduct violated the First, Fifth, Eighth, and Fourteenth Amendments of the Constitution as well as Article IV's Privileges and Immunities Clause. On May 2, 2005, Defendants filed a motion for summary judgment (doc. 46). On August 26, 2005 the Magistrate Judge recommended granting Defendants' motion (doc. 52).

Upon *de novo* review in accordance with the provisions of 28 U.S.C.

1

§636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation and **GRANTS** Defendants' May 2, 2002 motion for summary judgment (doc. 46).

**I. Facts.**

Plaintiffs are Tony King, Tony Spezzalli, and Christopher Bruggeman. However, Tony King has not participated in this lawsuit since on or about August 13, 2004. In the Amended Report and Recommendation, the Magistrate Judge ordered that Tony King show cause within 11 days of the date of the order why he should not be removed as a plaintiff for failure to prosecute. Tony King has not filed any objections to the Report and Recommendation. Accordingly, Tony King is **DISMISSED** from this lawsuit. Only the claims of Tony Spezzalli and Christopher Bruggeman will be discussed.

Plaintiffs' complaint names the following Defendants: (1) Reginald Wilkinson, Director, Ohio Department of Rehabilitation and Corrections ("ODRC"); (2) Cheryl Jorgensen-Martinez, Chief Inspector, ODRC; (3) Larry Yoder, Assistant Chief Inspector, ODRC; (4) Gregory Bucholtz, Assistant Chief Inspector; (5) Allen Lazaroff, Warden, Madison Correctional Institute; (6) Melony Lewis, Managing Officer, Madison Correctional Institute ("MaCI"); (7) Virginia Workman, Inspector of Institutional Services, MaCI; (8) Major P. Guyton, Chief of Security, MaCI; (9) Lt J. Burchtold, Chairman, Rules Infraction Board, MaCI; (10) Lt. Willingham, Chairman, Rules Infraction Board, MaCI; (11) J. Baird, Corrections Officer and Member of the Rules Infraction Board, MaCI; (12) S. Perry, Maintenance and Member of the Rules Infraction Board, MaCI; (13) Sgt. C. Warriox, Correctional Counselor, MaCI; (14) M. O'Day, Corrections Officer, MaCI; and (15) John/Jane Does, unknown. On January 4, 2005, Defendants Sgt. C.

Warriox and Assistant Chief Inspector Yoder were dismissed from this action for failure to effectuate service. (doc. 31).

The complaint alleges that Defendants violated the Privileges and Immunities Clause of Article IV, exposed them to cruel and unusual punishment in violation of the Eighth Amendment by punishing them with false conduct reports, violated their Fifth and Fourteenth Amendment rights to due process by knowingly convicting and punishing them with false conduct reports and for failing to provide them with an impartial and non-biased administrative review, and violated 5 U.S.C. § 551of the Administrative Procedures Act.

Bruggeman was assisting former Plaintiff Tony King in the grievance and appeals process. Officer O'Day allegedly tried to "place a 'chill effect'" on King's right to complain by telling Bruggeman not to help King. (Am. Compl., ¶ 66). Burggeman, prior to O'Day issuing him the conduct report, filed a grievance with Workman about O'Day's conduct. Workman issued Bruggeman an unfavorable decision. In retaliation, Bruggeman maintains that O'Day issued a false conduct report for disobedience of a direct order, disrespect, and threats. (Am. Compl., ¶ 71). On appeal, Bruggeman's grievance against O'Day was affirmed by Yoder. (Am. Compl., ¶ 72).

Bruggeman then filed a grievance with Chief Inspector Jorgensen-Martinez against Workman. (Am. Compl., ¶ 81). Jorgensen-Martinez issued Bruggeman an unfavorable decision. (Am. Compl., ¶ 83). The conduct report issued by O'Day came before the RIB; it found Bruggeman guilty of disobedience of a direct order and not guilty of threats and disrespect. (Am. Compl., ¶ 78).

Tony Spezzalli maintains that on January 26, 2003, O'Day falsified a conduct

3

report against Spezzalli for disobedience of a direct order, threats, and disrespect. (Am. Compl., ¶ 101). After calling O'Day as a witness, the RIB found Spezzalli guilty of all three offenses. (Am. Compl., ¶ 104). He filed an appeal to Managing Officer Lewis. (Am. Compl., 106). He also filed an informal complaint with Deputy Warden of Operations Sheets to complain about O'Day's issuance of the false conduct report. (Am. Compl., ¶ 107). Without interviewing Spezzalli, Lewis made an unfavorable disposition. (Am. Compl., 108). Spezzalli appealed to Workman and Yoder, both of whom affirmed the unfavorable disposition. (Am. Compl., ¶¶ 114-116). On August 22, 2003, Director Wilkinson invalidated the threats and disrespect convictions but affirmed Spezzalli's conviction for disobedience of a direct order. (Am. Compl., ¶¶ 117-18).

In their objections, Plaintiffs paraphrase their claims as follows: supervisory prison officials responsible for the grievance system intentionally protect their fellow employees from findings of misconduct and liability by engaging in a "buddy system," whereby conduct reports are rubber-stamped by prison officials and the Rules Infraction Board ("RIB"). It is through this "buddy system" that Defendants condone, acquiesce, and authorize the unconstitutional conduct.

II. **Discussion.**

A. **Documents 41, 42, and 43.**

Plaintiffs' first objection to the Report and Recommendation is that they have filed objections to other Report and Recommendations that have not yet been ruled upon. Specifically, Plaintiffs have objected to documents 41, 42 and 43, and the Court has not yet ruled on these objections. However, there is no requirement that the

objections to these documents be ruled on prior to this Court's ruling on the objections to the Magistrate Judge's August 26, 2005 Amended Report and Recommendation.

### B. Inappropriate Supervision.

Plaintiffs argue that the Magistrate Judge misinterpreted Ohio Admin. Code § 5120-9-04(B). Plaintiffs argue that writing one disciplinary ticket is sufficient to establish a claim for inappropriate supervision, and the Magistrate Judge misstated the law as requiring a pattern of harassment and not just the issuance of a single conduct report to establish a claim. They then cite the following language:

> As used herein, the term "inappropriate supervision" means any continuous method of annoying or needlessly harassing an inmate, including, without limitation, abusive language, racial slurs, and the writing of a disciplinary report (ticket) against an inmate or groups of inmates for nonexistent reasons.

This provision is from an earlier version of the Ohio Administrative Code. The language cited by the Magistrate Judge became effective August 19, 2004. It states

> (B) As used herein, the term "inappropriate supervision" means any continuous method of annoying or needlessly harassing an inmate or group of inmates, including, but not limited to, abusive language, racial slurs, and the writing of inmate conduct reports strictly as a means of harassment. A single incident may, due to its severity or egregiousness, be considered inappropriate supervision for purposes of this rule.

There is a general presumption that statutes operate prospectively. *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982); Ohio Rev. Code § 1.48 (stating "[a] statute is presumed to be prospective in its operation unless expressly made retrospective."). Defendants have not argued that the revised Ohio Administrative Code provision was intended to be retroactive. The version cited by Plaintiffs will be used to define inappropriate supervision.

5

Plaintiffs argue that they have pleaded a claim for inappropriate supervision against Officer O'Day. As evidence, Plaintiffs include statistics of grievance appeals which show that not a single inmate has succeeded on a claim of inappropriate supervision, and that this fact, and the Magistrate Judge's improper quotation of the Ohio Administrative Code, frustrates their claims that the issuance of a false conduct report violates their constitutional rights.

In order to establish a claim for inappropriate supervision under the version of the Ohio Administrative Code in effect at the time this action was filed, Plaintiffs must still make substantially the same showing as under the present version of the regulation. Under both versions, a single conduct report issued for the purpose of harassing or annoying an inmate maybe sufficient to establish inappropriate supervision. Accordingly, the issue is whether Plaintiffs have presented a question of fact as to whether Officer O'Day issued a conduct report to Plaintiffs for non-existent reasons.

O'Day issued Bruggeman and Spezzalli each a single conduct report for threats, disobedience of a direct order, and disrespect. The RIB found Bruggeman guilty of disobedience of a direct order but not guilty of threats or disrespect. Spezzalli was convicted of all three charges by the RIB, but Director Wilkinson later invalidated the threats and disrespect convictions but upheld the conviction for disobedience of a direct order.

The fact that Bruggeman was convicted of some, but not all of the charges, is evidence that O'Day did not issue the conduct report for non-existent reasons. The same is true for Spezzalli. After an independent review conducted by Director

6

Wilkinson, he found that the evidence supported Spezzalli's conviction for disobedience. There is no evidence to support Plaintiffs' claims that O'Day's two conduct reports were issued for non-existent reasons. Moreover, Plaintiffs have otherwise failed to establish a claim for inappropriate supervision. The allegation that O'Day issued each Plaintiff a single conduct report is an insufficient basis for finding that O'Day engaged in "any continuous method of annoying or needlessly harassing an inmate."

### C. Retaliation Claims.

Plaintiffs next argue that Defendant O'Day issued false conduct reports to Bruggeman for assisting King in filing grievances, and that O'Day's conduct was retaliatory in nature. Bruggeman argues that he filed a grievance against O'Day because O'Day threatened him and told him not to help King with his grievances. Bruggeman argues that filing the grievance was constitutionally protected conduct, and that O'Day retaliated by issuing a conduct report to Bruggeman for threats and disrespect.

As the Magistrate Judge discussed, Bruggeman helping King file grievances is not constitutionally protected conduct. However, the analysis that must be undertaken is whether O'Day issued Bruggeman a conduct report because Bruggeman filed a grievance against O'Day.

"It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in a substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1997) (en banc). However, "First

7

Amendment rights, like many other rights, are circumscribed in the prison setting. *Id.* at 390. Like all First Amendment claims, the plaintiff is still required to show standing when alleging a retaliation claim. *Id.* at 394. "[T]he 'plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct [which is] likely to be redressed by the requested relief.'" *Id.* (quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984)).

> In general, there are three elements to a retaliation claim:
>
> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* The test is flexible and will vary depending on the context of the claim. *Id.*

The constitutionally protected conduct that Bruggeman engaged in was filing a grievance against O'Day. Next Bruggeman must show that action was taken against him that would "deter a person of ordinary firmness" from engaging in the constitutionally protected conduct. The adverse action alleged is O'Day issuing Bruggeman a conduct report. The third and final factor requires Bruggeman to show that the adverse action was motivated, at least in part, because of Bruggeman's exercise of his constitutionally protected conduct. It is under this third factor that Bruggeman's claim must fail.

On December 3, 2002, Bruggeman was issued a conduct report by O'Day. This occurred after Bruggeman filed a grievance predicting that O'Day was going to issue him a false conduct report. (Am. Compl. ¶ 69). The conduct report was issued after

8

Bruggeman was allegedly caught smoking in the dorm. (Am. Compl. ¶ 79.) Bruggeman does not contest that he was smoking in the dorm but argues that this is a minor infraction and that O'Day included additional false allegations against him so that he would be placed in segregation. (Am. Compl. ¶¶ 79-80). Bruggeman does not include any other details surrounding the issuance of the conduct report.

On November 22, 2002, Workman ruled unfavorably on Bruggeman's grievance. (Am. Compl. ¶ 70). On December 10, 2002, the RIB conducted an independent review of the charges against Bruggeman and upheld the charge for disobedience of a direct order and acquitted him of the threats charge. (Am. Compl. ¶¶ 76-78).

Without Bruggeman identifying any additional facts surrounding the issuance of the conduct report by O'Day, he has failed to establish or adequately allege a factual basis for finding that O'Day's actions were motivated to stop Bruggeman from exercising his constitutionally protected rights. Rather, the evidence presented shows that O'Day issued a conduct report to Bruggeman after he committed a rules violation: smoking in the dorm.

### D. Fair Hearing.

Plaintiffs argue that they were denied a fair hearing in violation of due process both when their grievances were reviewed and their charges were heard before the RIB. "False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing." *Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. June 18, 2004) (unreported). Here, even if one were to assume that O'Day did issue false conduct

9

reports, Plaintiffs have not established a constitutional violation unless the hearing before the RIB failed to meet the minimum requirements of due process.

Prisoners do retain due process rights; however, that process which is due may be lawfully restricted based on "the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (stating that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply). "The touchstone of due process is protection of the individual against arbitrary action of the government." *Id.* at 558. The process due in prison disciplinary proceedings is less than what is constitutionally required for parole revocation hearings because of the differing backdrops. *Id.* at 559-62. In disciplinary proceedings, the inmates have already been lawfully incarcerated, they are in a "tightly controlled environment," inmates are closely supervised, and the internal sanctioning process often creates confrontations and animosity. *Id.* at 562. Against this backdrop, the Supreme Court has stated that inmates are entitled to advance notice of the charges and if found guilty, a written statement of the evidence relied upon.

Plaintiffs argue that they have proven that they were denied an impartial tribunal for both their grievance appeals and their prison disciplinary proceedings. In their motion they argue that King did not receive a fair hearing; however, as already stated, King's claims have been dismissed from this suit.

Plaintiffs argue that Spezzalli did not receive a fair hearing because two of the three charges against him were found to be false. Therefore, the third must also be

10

false. The RIB convicted Spezzalli of all of the charges. On review, Director Wilkinson determined that the disrespect and threats convictions should be overturned. Wilkinson did not find O'Day's charges to be false. Wilkinson's actions speak to the degree of the evidence used to convict Spezzalli–not the falsity of the charges against him.

Plaintiffs argue that the Magistrate Judge determined that it is permissible for prison officials to issue false misconduct reports pursuant to the due process clause so long as the prisoner gets a fair hearing. Plaintiffs misinterpret the law. The Due Process Clause does not authorize the issuance of false conduct reports. However, when false conduct reports are issued to inmates, there is no constitutional violation so long as "the charges are subsequently adjudicated in a fair hearing." *Cromer,* 103 Fed. Appx. at 573.

### E. Respondeat Superior.

"[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). The term "knowingly acquiesced" is applied very narrowly, and liability on "knowing acquiescence" must be based on some degree of active participation, or the officials must have authorized the offending conduct. *Id.* Denial of administrative grievances is insufficient to establish liability. *Id.*

11

Defendants Reginald Wilkinson, Cheryl Jorgensen-Martinez, Major Guyton, and Allen Lazaroff argue that they did not actively participate in any of the conduct complained of and have only been named in the complaint because they occupy a supervisory position. As stated above, a defendant's denial of an administrative grievance is not sufficient to establish a constitutional claim under § 1983. Plaintiffs have not pleaded facts that support the position that these Defendants actively participated or knowingly acquiesced in violating their constitutional rights. *Shehee*, 199 F.3d at 300. The complaint refers to Guyton and Lazaroff only in their supervisory roles and does not state any conduct establishing active participation. Director Wilkinson is stated to have overturned a portion of Spezzalli's conviction, which does not plead a constitutional violation, and Jorgensen-Martinez's only role was in reviewing the grievances. Plaintiffs have not stated claims against these individuals.

Further, Plaintiffs stated in their motion in opposition to Defendants' motion for summary judgment that they are not seeking redress under a theory of *respondeat superior*. However, in their objections they make new allegations against Defendant Workman under their objections to the Magistrate Judge's recommendations, and Workman's role in the grievance procedure. Since Plaintiffs were not seeking to have Workman held liable on grounds of *respondeat superior*, Plaintiffs' objections are not relevant.

## III. Conclusion.

Plaintiffs Christopher R. Bruggeman and Tony Spezzalli's September 28, 2005 objections to the Magistrate Judge's August 26, 2005 Amended Report and

12

Recommendation (doc. 59) are **OVERRULED**.  The Magistrate Judge's August 26, 2005 Amended Report and Recommendation (doc. 52) is **AFFIRMED** and **ADOPTED**.  Defendants' May 2, 2005 motion for summary judgment (doc. 46) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter **JUDGMENT**.

                                                   /s/ Edmund A. Sargus    12-23-2005
                                                   Edmund A. Sargus, Judge
                                                   United States District Court